UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES DELAFIELD,

     Petitioner,

v.                                    CASE NO. 6:06-cv-1219-Orl-28KRS

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, *et al.,*

     Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. (Doc. No. 8). Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 9). Petitioner filed a reply to the response. (Doc. No. 11).

Petitioner alleges three claims for relief in his habeas petition: (1) his counsel provided ineffective assistance by misadvising Petitioner to plead guilty "without a factual basis"; (2) his counsel provided ineffective assistance by failing to interview and depose witnesses; and (3) his plea was induced and involuntary.

## I.   BACKGROUND

On February 4, 2003, Petitioner was charged by information with aggravated assault upon a law enforcement officer (count one), aggravated fleeing and eluding (count two), and driving while license revoked (count three). (Appendix A). Petitioner pled guilty to all three counts pursuant to a written plea agreement. (Appendix B). The trial court adjudicated Petitioner guilty of all three counts and found him to be a habitual felony offender. (Appendix D). He was sentenced to two terms of six and one-half years on counts one and two, and five years on count one, all to run concurrently. *Id.* Petitioner did not file a direct appeal.

On September 15, 2005, Petitioner filed a motion for post-conviction relief in state court pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Appendix E). The trial court summarily denied the motion on December 6, 2005. (Appendix F). Petitioner appealed, and the appellate court *per curiam* affirmed. *Delafield v. State*, 925 So. 2d 333 (Fla. 5th DCA 2006). Petitioner's motion for rehearing was denied, and mandate issued on April 26, 2006. (Appendix N). On August 9, 2006, Petitioner filed a timely petition for writ of habeas corpus in this Court. (Doc. No. 1).

## II.   GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206,

2

1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A.   Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (I)   there is an absence of available State corrective process; or
>
>        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from

3

considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1. In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id*.; *see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

**B.     Standard of Review Under the AEDPA**

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall

5

have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## C.    Standard for Ineffective Assistance of Counsel

The proper legal standard for assessing Petitioner's ineffective assistance of counsel claim was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court established a two-part test for assessing claims that counsel rendered ineffective assistance during criminal proceedings. *Id.* The two-part test is comprised of a prejudice prong and a performance prong and is applicable "to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In the context of a plea, Petitioner establishes *Strickland's* prejudice prong by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted). If Petitioner can establish the prejudice prong of the *Strickland* test, the court should consider whether counsel's performance was deficient under the first prong of *Strickland. See Alvord v. Wainwright*, 725 F.2d 1282, 1289-90 (11th Cir. 1984) (holding that when no prejudice shown, there is no need to address a claim that counsel was deficient); *see also Grayson v. Thompson*, 257 F.3d 1194, 1225 (11th Cir. 2001) ("In this case, we need not decide whether counsel's performance was in fact deficient because Grayson so clearly fails to satisfy the prejudice prong of the Sixth Amendment analysis.").

The performance prong of the *Strickland* test requires that Petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In assessing the challenged performance, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* at 689-90. As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under these presumptions and rules, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

**A.    Voluntariness of Plea (Claim Three)**

Petitioner alleges that his plea was involuntary because "the state attorney and defense counsel, created undue influence over the Petitioner."[1]  (Doc. No. 2 at 11-12). Specifically, Petitioner contends his counsel unduly influenced him by telling Petitioner "he was going to be sentenced to approximately 80 years" if he did not plea. *Id.* at 12. The trial court denied this claim on the merits, and the state appellate court *per curiam* affirmed.

In denying this claim, the state trial court found that the sentencing court "guaranteed that the plea was voluntary by . . . ensuring that [Petitioner] was satisfied with the advice and counseling given by his attorney . . . [and] ensuring that no one threatened or coerced [Petitioner] to take the plea." (Appendix F at 1-2). The state court's findings are amply supported by the record.  The plea agreement provides as follows:

> I enter this plea freely and voluntarily.  No person has forced, threatened or coerced me into entering this plea.  I am satisfied with the representation my lawyer has given me and I have fully discussed my case and the contents of this agreement.  I am relying upon no promises or assurances except as contained in this agreement.

(Appendix B).  During the sentencing hearing, Petitioner confirmed the accuracy of the foregoing provisions:

---

[1]Petitioner contends he was unduly influenced by his counsel's conduct because he is "illiterate." (Doc. No. 2 at 12).  Petitioner's claim of illiteracy is directly contradicted by his sworn testimony that he could "read, write and understand the English language" and had attended school through the tenth grade.  (Appendix C at 13).

**[Court:]** Have you had an opportunity to fully discuss your case including any possible defenses that you may have to these charges with your lawyer Mr. Webster?

**[Petitioner:]** Yes, ma'am.

**[Court:]** Are you satisfied with the advice and counseling he's given you?

**[Petitioner:]** Yes, ma'am.

**[Court:]** You understand that the maximum penalty that the Court can impose for Counts I and II in this case are fifteen years in the Department of Corrections and a fine of ten thousand dollars as to each of those offenses?

**[Petitioner:]** Yes, ma'am.

**[Court:]** You understand that if that penalty is enhanced as a habitual felony offender that the penalty could be doubled and you could be looking at thirty years in the Department of Corrections as to those offenses?

**[Petitioner:]** Yes, ma'am.

**[Court:]** And as to Count III . . . the maximum penalty is five years in prison and a fine of five thousand dollars or both; do you understand that?

**[Petitioner:]** Yes, ma'am.

**[Court:]** Other than what's been discussed here in open court, has anyone promised you anything in order to get you to enter the plea?

**[Petitioner:]** No, ma'am.

**[Court:]** Has anyone pressured you or threatened you or coerced you in any way to get you to enter the plea?

**[Petitioner:]** No, ma'am.

9

(Appendix C at 10-11). Petitioner also stated that he had a "good understanding of the charges." *Id.* As to the plea form, Petitioner confirmed that he had read and signed it, he understood "what the plea form says," and he swore that "everything in the plea form is true and correct." *Id.* at 11-12.

Claim three is contrary to the signed plea agreement and Petitioner's sworn statements, and the state court's decision clearly withstands review under section 2254(d). Accordingly, Petitioner cannot prevail on his claim that his plea was involuntarily entered.

**B.     Ineffective Assistance of Counsel Claims (Claims One and Two)**

At the outset, the Court notes that in assessing Petitioner's ineffective assistance of counsel claims, the state trial court correctly identified the governing legal principle set forth in *Strickland.* (Appendix F at 1). Further, Petitioner has not cited to any decision of the Supreme Court that, faced with materially indistinguishable facts, reached a decision different from the state court's in this case. Therefore, the state court's decision was not "contrary to" governing United States Supreme Court precedent. Thus, the only issues are whether the state court's application of *Strickland* was objectively unreasonable and whether Petitioner exhausted his claims.

**1.     Misadvising Petitioner to Plead Without a Factual Basis (Claim One)**

Petitioner alleges that his counsel was deficient in misadvising him "to enter [a] guilty plea without factual basis." (Doc. No. 1 at 5). Petitioner explained:

> Ineffective assistance of counsel occurred where defense counsel misadvised the Petitioner to plead guilty without first investigating the record and evidence, which were in complete contradiction to each other.

10

This information was the only evidence the State had to prove the alleged charges. In other words, counsel erred in advising the Petitioner to plead guilty without informing him of any viable defenses available to him. (Innocence, lying police, lack of knowledge of police being present at the scene, believing he was being attacked by civilians and trying to flee, etc.) the strength of the State's case and/or lack of evidence.

The trial court during the plea inquiry never questioned the Petitioner whether he was innocent or guilty of the charges he was being accused of therefore never establishing a factual basis for a plea of guilty.

\*   \*   \*

The Petitioner states that had he been advised of all the laws and facts, and that had he known he had a viable defense, he would not have pled guilty but would have insisted on going to trial.

(Doc. No. 2 at 6-7).

Respondents contend that this claim is procedurally barred because Petitioner did not allege the foregoing facts in support of this claim in the state court. (Doc. No. 9 at 8). Respondents are correct in part. Petitioner framed this claim differently, with different supporting facts in his Rule 3.850 motion, alleging only that "trial court or counsel didn't establish a factual basis for the plea." (Appendix E). In his memorandum in support of the Rule 3.850 motion, Petitioner focused on the requirements of Florida Rule of Criminal Procedure 3.172(a), and the actual sentencing proceedings. *Id.* at 41-45. Petitioner never alleged that his attorney failed to advise him of available "defenses." *Id.* Because Petitioner did not fairly present the portion of claim that counsel was ineffective in failing to advise him of available defenses, and has not argued that either of the two narrow

11

exceptions to the procedural bar apply,[2] the Court finds that portion of claim one is procedurally barred. *See supra* Part II.A (setting forth the law regarding exhaustion requirements).

The state court considered and rejected the remaining portion of claim one, that counsel misadvised him "to enter guilty plea without factual basis" reasoning as follows:

> At the time defense counsel recommended that [Petitioner] pled [sic] guilty to the plea agreement with the State, the evidence against [Petitioner] supported the charge. The evidence included the incident reports of two Seminole County Deputy Sheriffs, Officers Barnes and Eldridge . . . . Both officers swore that [Petitioner] was approached by Officer Eldridge due to a suspicion of an outstanding warrant. Moreover the officers swore that [Petitioner] refused to stop and cooperate and recklessly fled the scene, almost striking Officer Eldridge with his car. Finally, both officers swore that Officer Eldridge broke [Petitioner's] driver's side window with a baton in an attempt to stop the [Petitioner] from fleeing.

> [Petitioner] claims that these sworn events did not happen and that he did not know that he was being ordered to stop by a law enforcement officer. However, in his motion for post-conviction relief, [Petitioner] admits that "the officer knocked [Petitioner's] window out and he kept going." Based on

---

[2]Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). Petitioner generally argues that he is actually innocent of counts one and two; however that claim is not based on newly discovered evidence.

this admission, [Petitioner's] contention that he did not know the officers were attempting to stop him is meritless.

(Appendix F).

The foregoing analysis is supported by the record evidence and is not unreasonable.

Indeed, during the plea hearing, the state trial court instructed the State to "furnish a

factual basis for the plea, and the State did so:

> [W]e would provide evidence that on December the 8th, 2002, [Petitioner] was in the parking lot of the Sanford nightclub. Officers Eldridge and Shamar were outside the nightclub. They knew [Petitioner and believed] . . . that there was a warrant from Orange County outstanding for him.

> While [Petitioner] was making his way to his car, they checked and confirmed that, in fact, there was a warrant outstanding from Orange County. And also that his license was suspended for being a habitual traffic offender.

> Armed with that information, Officer Eldridge attempted to follow, or did follow [Petitioner] to his car. He yelled to him several times to stop. [Petitioner] did not. [Petitioner] got into his car. Officer Eldridge continued to yell to him to stop. [Petitioner] failed to do that as well.

> Officer Eldridge was toward the back of [Petitioner's] car. [Petitioner] accelerated his car in a quick fashion and Officer Eldridge had to jump to the side to avoid being struck by the [Petitioner's] car. The officer felt that if he didn't take the evasive action that he did, that he would have, in fact, been struck.

> At that point other law enforcement officers were aware of the events as well. Lights and sirens were activated. [Petitioner] took off through the parking lot, a fairly crowded parking lot, went up over a curb and actually almost struck another officer, Officer Shamar, in his haste to go out of the parking lot.

> He drove in a manner indicating a wanton and willful disregard for persons and property and at a speed in excess of what would be appropriate

13

for the parking lot, he went out onto the highway, Highway 17-92 and sped off again with lights and sirens activated.

[Petitioner] had knowledge that he had been directed to stop. They did not catch him at that point in time. He was later arrested on the capias.
. . .

The car utilized by law enforcement was an authorized law enforcement vehicle, had the Sanford Police Department insignia and other jurisdictional markings prominently displayed on the vehicle. The officers were in uniform as well, and [Petitioner] knew that these officers were, in fact, officers.

(Appendix C at 13-15). Because the state courts' rejection of the exhausted portion of claim one is reasonable and supported by the record, Petitioner cannot prevail on this claim pursuant to section 2254(d).

### 2.    Failure to Interview or Depose Potential Witnesses

Petitioner alleges that his counsel provided ineffective assistance in that he "failed to interview or depose potential witnesses." (Doc. No. 1 at 6-7). Specifically, Petitioner argues that he "advised his counsel of several witnesses that would have testified that he was not guilty of the alleged charges for which he was being accused and had this information been developed, Petitioner would have insisted on going to trial and would have been exonerated." (Doc. No. 2 at 8).[3] In rejecting this claim, the state trial court held:

---

[3]In his memorandum, Petitioner identifies the witnesses as Security Guards David Willis and Charles Knotts, Antoine Floyd, Kenneth Sheppard and Travis Davis. *Id.* at 8-9. The two security guards purportedly would have testified that: (1) "the parking lot was very crowded," (2) it was "possible the Petitioner could not have heard officers trying to get his attention," (3) the officer knocked Petitioner's car window out and kept on going, (4) the officer "was never in any danger," and (5) there was no chase after the Petitioner. *Id.* at 9. The remaining three witnesses purportedly would have testified that: (1) the parking lot was crowded, (2) Officer Frederick Eldridge never "placed himself in danger

> Based on the facts and circumstances as they existed at the time of the plea agreement, it is clear that defense counsel's representation achieved an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 669 (1984). [Petitioner] has failed to show a specific omission or overt act which demonstrates prejudice "to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings. . . . Moreover, . . . [Petitioner] has failed to show any specific unreasonable act taken by his counsel that prejudiced his case.

(Appendix F at 5-6). In so holding, the state trial court noted Petitioner's admission that "his counsel believed that the witnesses were not credible and would offer nothing to his defense." *Id.* at 5.

This Court cannot find that the state court's decision rejecting Petitioner's claim that his attorney provided ineffective assistance in advising Petitioner to plead guilty without deposing certain identified witnesses was "contrary to" the governing legal authority. Furthermore, the Court is unable to say that the trial court's application of *Strickland* was objectively unreasonable. "[A]n unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. This Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. Relief is

---

of Petitioner's vehicle," (3) Officer Shamar did not "give chase" to Petitioner, but was in the parking lot when Petitioner pulled away. *Id.* Petitioner has not offered evidence that any of these witnesses would have offered such testimony had he gone to trial. Accordingly, this claim must also be denied as speculative. *Daniels v. McDonough,* 2006 WL 2620143, at *10 (M.D. Fla. 2006) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

only warranted if the application was unreasonable. *Id.* Under this demanding standard, Petitioner cannot prevail on his claim.[4]

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by James Delafield (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this ⌐ day of August, 2007.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
pslc 8/1
Counsel of Record
James Delafield

---

[4]Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

16